## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 19 2017, 9:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Phillips
Boonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Edward John Meiggs, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 19, 2017 <br><br> Court of Appeals Case No. <br> 82A01-1706-CR-1261 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Robert J. Pigman, Judge <br><br> Trial Court Cause No. <br> 82D03-1505-F3-2607 |

**Baker, Judge.**

[1] Edward Meiggs appeals his conviction for Level 3 Felony Rape.[1] He argues that the trial court erred by excluding certain evidence, providing a supplemental jury instruction, and failing to provide a sufficient sentencing statement.[2] He also contends that we should reverse based on prosecutorial misconduct. Finding no error or prosecutorial misconduct, we affirm.

## Facts

[2] On May 6, 2015, A.W. went to Evansville Metaphysics for an hour-long massage. Shortly after she arrived, Meiggs emerged and directed A.W. to a small room where the massage would take place. In preparation for the massage, A.W. removed all of her clothes except for her underwear.

[3] At the end of the hour, Meiggs asked A.W. if she wanted him to continue because his next client would not arrive for thirty minutes. She agreed, and he began massaging her lower legs. Meiggs touched her vulva over her underwear, then pulled her underwear to the side and inserted his fingers into her vagina. A.W. said "no" and tightened her legs, pushing them together. Tr. Vol. I p. 50. He ignored her, presumably pulled apart her tightened legs, and continued with the assault. He again inserted his fingers into her vagina, and she again said no. Still ignoring her, he placed his tongue on her anus and then inserted his tongue into her vagina. At that point, "she was afraid to resist anymore." *Id.* at 43.

---

[1] Ind. Code § 35-42-4-1(a)(1).

[2] Meiggs also argues that the jury's verdicts were inconsistent. But our Supreme Court has clearly stated that claims of inconsistent verdicts are not reviewable on appeal. *Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010). Therefore, we will not address this argument.

A.W. did not fight back "[b]ecause [her] face was down the whole time; [she] didn't know if he had a weapon; . . . [she] knew that [she] couldn't win; [she] knew that there was nothing [she] could do." *Id.* at 59. This behavior continued for ten to fifteen minutes; afterwards, Meiggs whispered in A.W.'s ear "that was nice thank you," and A.W. left the office. *Id.* at 60.

[4] A.W. was "shocked" and "shaken" after the incident and went to a friend's home. *Id.* at 94. A.W. told her friend what had happened and called the police. The responding officer took A.W. to a local hospital for a rape kit examination. The Sexual Assault Nurse Examiner collected internal and external genital swabs and collected A.W.'s clothing and underwear. The external genital swab contained male DNA; Meiggs could not be excluded as a contributor to that sample. Tr. Vol. II p. 5. Testing was later performed on A.W.'s clothing; Meiggs's DNA was not on the clothing but other unknown male DNA was.

[5] On May 8, 2015, the State charged Meiggs with three counts of Level 3 felony rape. Meiggs's jury trial began on April 17, 2017. At trial, counsel for Meiggs acknowledged that Meiggs had given A.W. a massage but denied that Meiggs had in any way touched her beneath her underwear, emphasizing to the jury the lack of Meiggs's DNA on A.W.'s clothing and internal genital swabs.

[6] During the trial, the State intended to introduce into evidence the certificate of lab analysis regarding the DNA testing on A.W.'s clothing, but sought to redact all information regarding the unknown male DNA. The trial court excluded

the certificate of lab analysis from evidence altogether but permitted the lab analyst to testify that Meiggs's DNA was not found on A.W.'s clothing. Meiggs wanted to cross-examine the analyst about the unknown male DNA found on the clothing, but the trial court prohibited that line of questioning, finding it irrelevant.

[7] During closing argument, Meiggs objected to statements made by the prosecutor, arguing that the prosecutor had misstated the testimony of certain witnesses. The trial court overruled the objection and permitted closing arguments to proceed.

[8] After the jury began deliberating, the jury sent the following question to the trial court: "Does saliva on [A.W.'s] vagina indicate that there was penetration of [A.W.'s] vagina with his tongue?" Tr. Vol. II p. 54. The trial court responded with a note to the jurors asking whether the legal definition of penetration— which had been omitted from the final jury instructions—would assist them. The jury said that it would, and also sent the trial court a second question: "Are the charges solely based on 'penetration' or the entire definition of [Jury] Instruction #7[?]" Tr. Ex. p. 16.

[9] Over Meiggs's objection, the trial court provided the jury with this definition of penetration: "The slightest penetration of the sex organ, external genitalia, or vulva may be sufficient to support" a conviction. *Id.* at 17. Also over Meiggs's objection, the trial court declined to answer the second question, concluding

that "they're confused about what penetration was" and that the definition of penetration would suffice. Tr. Vol. II p. 62.

[10] Ultimately, the jury found Meiggs guilty of one count of rape and not guilty of the other two counts of rape. On May 10, 2017, the trial court sentenced Meiggs to a nine-year term of imprisonment. Meiggs now appeals.

# Discussion and Decision[3]

## I. Exclusion of Evidence

[11] Meiggs first argues that the trial court erroneously excluded evidence—including the certificate of lab analysis and testimony of the expert witnesses—related to the unknown male DNA found on A.W.'s clothing. The admission and exclusion of evidence falls within the trial court's sound discretion, and we will reverse only if the decision is clearly against the logic and effect of the facts and circumstances before it. *Johnson v. State*, 6 N.E.3d 491, 498 (Ind. Ct. App. 2014).

[12] While Meiggs highlights the Rape Shield Rule in his briefs, it is apparent that the trial court did not exclude this evidence on that basis. Instead, the trial court excluded this evidence because it was irrelevant. Tr. p. 127. Indiana Evidence Rule 401 provides that evidence is relevant if it (1) has any tendency

---

[3] Meiggs does not argue that there is insufficient evidence supporting the "force or imminent threat of force" element of rape, I.C. § 35-42-4-1(a)(1), presumably because his defense at trial was that he did not commit the act at all.

to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action.

[13] Here, the jury heard evidence that Meiggs's DNA was not found on the internal genital swabs or A.W.'s clothing. Indeed, Meiggs's counsel repeatedly emphasized this evidence throughout the trial, as it supported Meiggs's defense that, while he had given A.W. a massage, he had not touched her beneath her underwear. Whether there was unknown male DNA on A.W.'s clothing is wholly irrelevant to the fact that Meiggs's was not. This unknown DNA did not make it any more or less probable that Meiggs had committed the acts with which he was charged and was not of consequence in determining the action.[4] Consequently, the trial court did not err by finding that this evidence was irrelevant and inadmissible.

## II. Prosecutorial Misconduct

[14] Next, Meiggs argues that his conviction should be reversed based on prosecutorial misconduct. Our Supreme Court has explained that "[w]e review a prosecutorial misconduct claim using a two-step analysis. First, there must be misconduct; and second, the misconduct must have placed the defendant in a position of grave peril." *State v. Taylor*, 49 N.E.3d 1019, 1029 (Ind. 2016). A prosecutor must confine closing argument to comments based upon the evidence in the record, though he may argue both law and facts and propound

---

[4] Meiggs spends much time arguing about his constitutional right to confront and cross-examine witnesses. He has no constitutional right, however, to cross-examine witnesses about matters that are irrelevant to his guilt or innocence.

conclusions based upon his analysis of the evidence. *Lambert v. State*, 743
N.E.2d 719, 734 (Ind. 2001).

[15] Here, Meiggs argues that the prosecutor committed misconduct by misstating
the evidence in the record in the following portions of closing argument:

> State: . . . If you look back at the DNA evidence the
> analyst said some of these results were inconclusive,
> a determination couldn't be made, and some were
> conclusive. Where they found none of his DNA on
> some of those items, but it's important to go back on
> the external genital swabs. . . . Nicole Hoffman, the
> first DNA technician, when she talked about the
> genital swab on the external area she said that
> amylase was detected.
>
> Defense: Judge I'm going to object . . . .
>
> ***
>
> Court: . . . The jury will decide whether that was testified
> to or not. Okay, go on.
>
> State: Amylase is a component of saliva. Mr. Phillips said
> a lot of things that I didn't hear an explanation of
> how his DNA while giving a massage while never
> having touched her in any . . . inappropriate
> manner. Some of you have gone to massages, some
> of you have gotten them, it doesn't happen rubbing
> the quads. It doesn't happen rubbing the butt of
> which would be inappropriate anyway. How does
> that DNA get on there? How does [it] end up on
> her external genitalia? How does saliva end up
> there? How does amylase end up getting detected?

And so, we can imagine, and we can conjure . . . or we can look at the simple explanation that was made from the beginning. . . .

Tr. Vol. II p. 47-48. Meiggs argues that the prosecutor's statements regarding the presence of amylase on the external swab and the implication that Meiggs's saliva was on her external genitalia did not accurately reflect the evidence in the record.

[16] The record reveals that Nicole Hoffman testified that "amylase was detected" on the external genital swabs and that amylase is a component of saliva. Tr. Vol. I p. 233. She explained that male DNA was found on these swabs but that the technology offered in her lab was not sophisticated enough to do further analysis on that DNA; consequently, those samples were sent to a laboratory in Indianapolis. Nicole Keeling, who works for the laboratory in Indianapolis, then testified that she tested the external genital swabs and concluded that Meiggs could not be excluded as a contributor to that DNA sample. *Id.* at 5.

[17] Therefore, the record supports the prosecutor's statement that amylase was found in the external genital swabs. While the prosecutor could have been more accurate than to state that Meiggs's DNA was definitively present in the external genital swabs, the expert testified that Meiggs cannot be excluded as a contributor. The prosecutor was within his purview to point out that there was amylase on the external genital swabs, that amylase is a component of saliva, and that Meiggs cannot be excluded as a DNA contributor; and then to question how Meiggs's saliva ended up on A.W.'s external genitalia if it was

truly a normal massage. In our view, this amounts to permissible propounding of conclusions based on the evidence. In other words, we find no prosecutorial misconduct.

## III. Jury Instructions

[18] Next, Meiggs argues that the trial court erred by providing a new instruction to the jury defining the term "penetration" rather than rereading all of the instructions to the jurors. He does not argue that the instruction regarding penetration was an incorrect statement of the law, instead contending that the procedure employed by the trial court was problematic.

[19] The generally accepted procedure in answering a jury's question on a matter of law is to reread all instructions to avoid emphasizing any particular point and not to qualify, modify, or explain the instructions in any way. *Riley v. State*, 717 N.E.2d 489, 493 (Ind. 1999). Our Supreme Court has created an explicit exception to this general practice, however, when a trial court is faced with an omitted and necessary instruction. *Martin v. State*, 760 N.E.2d 597, 601 (Ind. 2002). In other words, when the jury question relates to a gap in the final jury instructions, "'a response other than rereading from the body of final instructions is permissible.'" *Id.* (quoting *Jenkins v. State*, 424 N.E.2d 1002, 1003 (Ind. 1981)).

[20] Here, the trial court was faced with precisely such a gap. The final jury instructions did not define the term "penetration," which is a key term that the jurors were required to consider. The trial court acted within its discretion to

fill this gap by providing an instruction defining the term and to decline to answer the other question posed by the jury. In accordance with *Martin* and *Jenkins*, the trial court was not required to reread all instructions and did not err by declining to do so.

## IV. Sentencing

[21] Finally, Meiggs argues that the trial court erred by finding aggravating and mitigating circumstances but failing to identify them. We disagree, as the trial court plainly described all aggravators and mitigators at the sentencing hearing:

> The Court . . . now sentences the defendant to the Indiana Department of Correction[] for a period of nine years . . . which is the advisory or standard sentence for a Level 3 felony, and orders that sentence executed. There are mitigating circumstances, some of which have been mentioned here; his lack of a prior record and his service in the military. The Court finds the nature and circumstances of the . . . offense . . . is also an aggravating circumstance that offsets those. So the Court determines the standard sentence is appropriate.

Tr. Vol. II p. 80. As the trial court did, in fact, identify the mitigators and aggravators, we find no error in this regard.

[22] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.